THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-421-FL

| | |
|---|---|
| ELIZABETH RADFORD, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Elizabeth Radford ("Claimant") filed this action pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed an application for SSI payments on 11 April 2006, alleging disability beginning 30 March 2006. (R. 89-93). Her claim was denied initially and upon reconsideration. (R. 52-53, 57-66). A hearing before the Administrative Law Judge ("ALJ") was held on 21 February 2008, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 19-43). On 10 April 2008, the ALJ issued a decision denying

Claimant's request for benefits. (R. 7-18). On 2 July 2008, the Appeals Council denied Claimant's request for review. (R. 1-2). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) finding the severity of Claimant's mental impairment does not meet or equal the requirements of Listing 12.05C; (2) failure to give controlling weight to the opinion of Claimant's treating physician; and (3) failure

3

to demonstrate that Claimant could perform other work. *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 13, 15-16. ("Pl.'s Mem.") [DE-26.3].

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: (1) hypertension; (2) headaches; (3) asthma; (4) obesity; and (5) mild mental retardation. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant had "mild restriction" in activities of daily living, "mild difficulties" in social functioning, "moderate difficulties" with regard to concentration, persistence or pace and experienced no episodes of decompensation. (R. 14).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a narrow range of sedentary work[1] that is simple, repetitive and routine in

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a); Soc. Sec. Rul. ("S.S.R.") 96-9p, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

nature and does not require working at heights, around dangerous machinery or climbing, nor frequent stooping, crouching, kneeling or crawling. (R. 15). The ALJ found further that Claimant cannot perform jobs requiring complex decision making, constant change or dealing with crisis situations. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 15). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a production assembler. (R. 16). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as order clerk, call out operator and charge account clerk. (R. 17).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 42 years old, unemployed and living with her husband and 13-year old daughter. (R. 23-24, 27). Claimant is a high school graduate; however, she participated in vocational rehabilitation or special education courses throughout her schooling as a result of brain damage caused by drinking kerosene when she was five years old. (R. 23-24). Claimant last worked a full-time job in 1994 with Aero Systems, Inc., where her duties included sewing cargo nets for ships. (R. 25, 28). Claimant secured this position through the efforts of a vocational rehabilitation counselor and stopped working when the plant closed. (R. 28). Claimant testified that her counselor has been unsuccessful in securing other employment for Claimant. (R. 28-29). Claimant's past work experience also includes sewing nets for another company and working at a daycare center owned by a family member on an as-needed basis, approximately two days a month. (R. 26, 29-30).

5

Claimant testified that she is unable to work due to migraine headaches, asthma and a mental impairment. Claimant experiences reading comprehension difficulties and is incapable of handling money. (R. 27). Claimant's headaches, which occur 2-4 times per months, cause nausea that is relieved with lying down in a quiet, dark room. (R. 32-33). Claimant's asthma, for which she uses two inhalers per day, prevents her from "do[ing] much without getting out of breath . . . ." (R. 33). Claimant testified that her primary physician believes Claimant cannot return to work due to breathing problems. (R. 33-34)

Claimant testified that she is unable to stand for more than fifteen minutes and has difficulty bending. (R. 34-35). Claimant cooks when she is able, watches television, attends church, and does the laundry and grocery shops with the assistance of family members. (R. 34-35). Claimant has no hobbies and her only form of exercise is walking "when [she] can." (R. 36). Claimant's daughter and husband perform all yard work. (R. 36).

### III. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little, a rehabilitation consultant, testified as a VE at the administrative hearing. (R. 38-41, 69-73). After the VE's testimony regarding Claimant's past work experience (R. 38), the ALJ posed the following hypothetical:

> Assum[e] an individual, age 41, with a 12th grade education, but in special education so not a high school diploma . . . [with] the exertional capacity for sedentary work . . . with the following nonexertional limitations: no climbing, working at heights, or around dangerous machinery, or working in environments with respiratory irritants. Occasional balancing, frequent stooping, crouching, kneeling, and crawling, limited to simple, routine, repetitive tasks and unable to work at jobs requiring complex decision making, constant change or dealing with crisis situations. . . . [W]ould there be occupations that such an individual could perform?

(R. 39). The VE responded the individual could perform the following sedentary positions with a specific vocational preparation ("SVP") time of 2 and provided DOT classification citations along with the number of jobs available in the local and national economies: (1) order clerk - DOT 209.567-014, 1,000 to 2,000 locally, 50,000 to 100,000 nationally; (2) call-out operator - DOT 237.367-014, 1,000 to 2,000 locally, 50,000 to 100,000 nationally; and (3) charge account clerk - DOT 205.367.014, 2,000-3,000 locally, 100,000 to 200,000 nationally. *Id.*

In response to questioning from Claimant's counsel, the VE stated that the above jobs would "possibly" require an employee to "use some keyboard or computer or keypunch" but "it would not be the type of situation that would require past knowledge." *Id.* The VE opined further that all three jobs require the ability to perform simple mathematics. (R. 41). Claimant's counsel also asked the VE to

> assume the same hypothetical but classified as less than sedentary, assuming that the employee could not stand for as much as two hours during an eight-hour workday and that in addition to having no respiratory irritants, there could be no exertion on the part of the person, as well as the inability to use a computer, would there be any jobs available?

(R. 40). The VE responded in the negative.

## DISCUSSION

I. **The ALJ's finding that Claimant's impairment did not meet or equal Listing 12.05 is not supported by substantial evidence.**

Claimant argues that the ALJ erred by finding that her impairment does not meet or equal Listing 12.05, the listing for mental retardation. Pl.'s Mem. at 10 [DE-26.2].

Claimant bears the burden of demonstrating that her impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Listing 12.05 sets forth a two-part inquiry for determining mental retardation.

7

*Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. First, a claimant must satisfy the diagnostic description of mental retardation, which requires a showing of "(1) significantly subaverage general intellectual functioning[2] (2) with deficits in adaptive functioning[3] (3) initially manifested during the developmental period; i.e.... before age 22." *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05). Upon making this showing, the claimant must then meet the required severity level of this disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D) under § 12.05. *Id.* Claimant contends she satisfies the mental retardation listing under category C ("Listing 12.05C"), which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, that imposes an additional and significant work-related limitation of function.[4] *Id.* at § 12.05C.

---

[2] The phrase "significantly subaverage general intellectual functioning" is also found in the definition of mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), which the DSM-IV defines as "an IQ of about 70 or below." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39 (4th ed. 1994).

[3] Listing 12.05 does not define "adaptive functioning." Regulations promulgated by the SSA provide that "[t]he definition of [mental retardation] . . . in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002). Given "the SSA declined to adopt any one of [these] specific definitions, . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, *inter alia*, deficits in adaptive functioning as defined by any of the four professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

[4] The "work-related limitation of function" requirement is satisfied when the claimant is determined to have a severe impairment at step two of the evaluation process. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *see also Flowers v. U.S. Dep't Health & Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § [12.05C]"); *accord Luckey v. Dept. of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) (holding that claimant satisfies the second prong of 12.05C if claimant has an additional severe impairment or cannot perform his past relevant work).

a.  *Severity Level*

In this case, Claimant has met the required *level of severity* for Listing 12.05C. As acknowledged by the ALJ, Claimant scored a verbal intelligence quotient ("IQ") of 65, performance IQ of 74 and a full scale IQ of 66 on the Weschsler Adult Intelligence Scale ("WAIS") test, administered by state agency examining consultant James Frazier, Ph.D. (R. 14, 149). Neither Dr. Frazier nor the ALJ questioned the accuracy of the scores.[5] "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(6)(c) *see also Rainey v. Heckler*, 770 F.2d 408, 410 (4th Cir. 1985). Claimant's lowest score on the WAIS was a verbal IQ of 65, which falls within the sixty to sixty-nine range required under § 12.05C.[6] (R. 14, 149).

Moreover, the ALJ found at step two that Claimant suffered from severe impairments which significantly limit her ability to perform basic work related functions. (R. 12); *see* 20 C.F.R. § 416.920(c) (defining a "severe" impairment as one "which significantly limits [one's] physical or mental ability to do basic work activities"). Additionally, the ALJ concluded at step four that Claimant was limited to sedentary, unskilled work, and, as a result, is unable to perform

---

[5] The Court notes that school records indicate IQ scores of 72 and 80, recorded when Claimant was fifteen years old. (R. 101-02). These scores appear also in a Psychiatric Review Technique form ("PRTF") prepared by Brett Fox, Psy.D., a non-examining state agency consultant. (R. 190). The ALJ does not mention these scores nor cite the records containing said scores. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(D)(10) (explaining the mental impairment listings applicable to *children* specify that I.Q. test scores must be "sufficiently current" for accurate assessment under the listing and that I.Q. scores obtained between the ages of seven and sixteen are considered current for only two years if they are higher than 40).

[6] While this score was recorded after the developmental period, a person's IQ is presumed to remain stable over time "in the absence of any evidence of a change in a claimant's intellectual functioning." *Luckey*, 890 F.2d at 669.

9

her past relevant work. (R. 16). Based on the ALJ's findings, Claimant meets the additional significant work-related limitation requirement under Listing 12.05C. *See Flowers*, 904 F.2d at 214; *Luckey*, 890 F.2d at 669. Accordingly, the ALJ erred in finding the severity requirements of Listing 12.05C were not met.[7]

b.   *Deficits in Adaptive Functioning*

While Claimant satisfies the Listing 12.05C criteria, she must satisfy also the diagnostic description of mental retardation. *See Justice v. Barnhart*, 431 F. Supp. 2d 617, 619 (W.D. Va. 2006) ("[E]ven if the record clearly establishes that [a claimant] meets the [severity] requirements of [Listing 12.05C], a finding of mental retardation cannot be warranted without a finding that [claimant] manifested deficits in adaptive functioning before age 22.") (citing *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)). Claimant participated in special education classes throughout her schooling. (R. 23-24, 39, 148). Dr. Frazier diagnosed Claimant with "probable minimal reading skills" and described her math skills as "quite poor." (R. 13, 150). Claimant testified that a vocational rehabilitation counselor's attempts to secure employment on Claimant's behalf since 1995 have been unsuccessful. (R. 29, 31). The only job within the relevant time period was a sewing position for a company, secured through the assistance of her counselor, in which her sole duty was to "mash[] a button." (R. 30, 38). Prior to that position, she worked for another sewing company from which she was terminated because she "could not meet the qualifications for production work" and worked periodically at a

---

[7] In particular, the ALJ found that "[i]n terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (R. 14)

10

daycare center owned by a family member. (R. 26, 30). Claimant testified further to an inability to manage money and Dr. Frazier advised that a third-party manage Claimant's disability benefits, if awarded. (R. 27, 151). Such evidence suggests Claimant demonstrated deficits in adaptive functioning. *See Durden,* 586 F. Supp. 2d at 838 (identifying a claimant's inability to manage a benefit check on her own behalf as an adaptive deficit); *Maresh v. Barnhart,* 438 F.3d 897, 900 (8th Cir. 2006) (struggling in special education classes, having trouble with reading, writing and math, and dropping out of school in the ninth grade constituted evidence of mental retardation prior to age 22); *Hatfield v. Astrue,* No. 5:07-00267, 2008 WL 4449948, at *12 (S.D. W. Va. Sept. 29, 2008) (explaining claimant failed to demonstrate deficits in adaptive functioning as he was not enrolled in special education classes in school, had a lengthy employment history and managed his own finances); *Edwards v. Comm'r of Soc. Sec.,* No. 1:07-CV-848, 2008 WL 4425587, at *8 (W.D. Mich. Sept. 9, 2008) (identifying claimant's participation in special education classes and inconsistent work history as evidence of deficits in adaptive functioning); *Lombard v. Barnhart,* No. 02-146-B-W, 2003 WL 22466178, at *3 (D. Me. 2003) (claimant's status as a special education student and his inability to read and write constituted sufficient evidence of onset prior to age 22, in spite of evidence that the claimant had received A's, B's and C's in school, and had held a job for at least 18 years).

With the exception of Claimant's education history, it is unclear whether Claimant suffered from other adaptive deficiencies prior to age twenty-two and Claimant points to no such evidence. Nonetheless, this Court cannot conclude that the ALJ's opinion is supported by substantial evidence. The ALJ did not address whether Claimant's diagnosed condition of mild mental retardation manifested during Claimant's development period. Rather, the ALJ stated

11

only that Claimant "had no deficits in adaptive functioning as she did household chores, married, raised a family, and worked for several years." (R. 14).

However, the fact an individual is able to work, complete household chores, and raise a family is not inconsistent with mild mental retardation. *See Durden*, 586 F. Supp. 2d at 839 (explaining "[w]hile [gardening, driving and perfoming household chores] would tend to support a finding that [claimant] does not have deficits in certain areas of adaptive functioning, they do not necessarily negate a finding of such deficits in other areas); *see also Grenham v. Astrue*, No. 08-CV-11151-LTS, 2009 WL 1209026, at *5 (D. Mass. May 4, 2009) (explaining "[a] person with mild mental retardation may be able to maintain a household, care for children, and obtain a GED or may have been enrolled in regular, as opposed to special education, classes, and may be able to read and write without difficulty) (citations omitted). Indeed, "individuals with [m]ild [m]ental [r]etardation can usually live successfully in the community. . . ." DSM-IV at 41. Nevertheless, "the Secretary, in promulgating Listing 12.05C, expressly singled out individuals with [m]ild [m]ental [r]etardation for special treatment in determining entitlements to disability benefits." *Brown v. Sec'y of HHS*, 948 F.2d 268, 270 (6th Cir. 1991). As explained in *Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007),

> DSM-IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C). This listing implies that such an individual will be able to work unless he has, or until he develops, a severe physical or additional mental impairment. Therefore, the fact that [a claimant] has a history of continuous employment in the past is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments.

12

*See also Grenham*, 2009 WL 1209026, at *5 (explaining "the Listings reflect this reality [e.g., to work and maintain a household], as they require a claimant to demonstrate another impairment apart from mild mental retardation before they can be found disabled") (citing *Nieves v. Sec'y of Health & Human Services*, 775 F.2d 12, 14 (1st Cir. 1985)).

There may be evidence from which to find that the onset of Claimant's mental impairment was not manifest before age twenty-two; however, the ALJ cites none. As it presently stands, the ALJ's finding of no deficits in adaptive functioning arguably contradicts his finding of mild mental retardation. *See Durden*, 586 F. Supp. 2d at 834 (characterizing as "inconsistent" the ALJ's finding that claimant's severe impairments included mild mental retardation with the finding that claimant did not have deficits in adaptive functioning); *Edwards*, 2008 WL 4425587, at *8 (reversing ALJ's decision that claimant did not satisfy Listing 12.05C because court's determination that claimant suffered from deficits in adaptive functioning based on special education cases and inconsistent work history "is further supported by the ALJ's conclusion that [claimant] suffers from mental retardation"); *Durham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (noting contradiction between ALJ's finding that claimant did not satisfy the diagnostic definition of Listing 12.05 and his acceptance of the mild mental retardation diagnosis by two psychologists).

The ALJ determined incorrectly that Claimant did not satisfy the severity criteria of Listing 12.05C and failed to properly articulate his findings to support the conclusion that Claimant lacks "the requisite deficits in adaptive functioning." Accordingly, the Court believes this case must be remanded for the ALJ to determine whether Claimant's condition meets or equals the Listing 12.05C and to explain how the evidence on the record as a whole supports the

decision. Because this Court finds that remand on this issue will affect the remaining issues raised by Claimant, it does not address these arguments.

## **CONCLUSION**

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, 14th the day of May, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge